

# OFFICE OF THE ATTORNEY GENERAL OF TEXAS

## AUSTIN

GERALD C. MANN
ATTORNEY GENERAL

Honorable George H. Sheppard
Comptroller of Public Accounts
Austin, Texas

Dear Sir:

                    Opinion No. O-2361
                    Re: Authority of Comptroller of Public
                        Accounts, under Section 13, Article
                        7065, Vernon's Annotated Civil
                        Statutes, to issue warrants in
                        payment of Motor Fuel Tax refund
                        claims on motor fuel used for the
                        purposes and under the conditions
                        stated.

        Your letter of May 30, 1940, requests our interpreta-
tion of the refund provisions of the Motor Fuel Tax Law (Section
13, Article 7065, Vernon's Annotated Civil Statutes), under
certain factual situations, which we will, for convenience and
clarity, hereinafter separately state in connection with the
discussion of each question. The question generally is whether
the tax is refundable on motor fuel purchased and used in connec-
tion with registered or licensed motor vehicles, not only to
propel such vehicles upon the highways of this State, but also
over private property and ways, and to operate the described
power equipment in or upon such motor vehicles. Five of such
factual statements are presented, and in connection with each
you ask this question:

        "Would this department be authorized to issue
warrants in payment of Motor Fuel Tax Refund claims
filed for refund of the tax on motor fuel used for
operating any of the units referred to in the five
items above? (Article 7065, Section 13d)"

        Section 13, Article 7065, Vernon's Annotated Civil
Statutes, includes within its eight subsections all of the
terms and provisions regulating the making and allowance of
refund claims by the State for taxes collected on the sale of
motor fuel within the State for use under certain conditions

NO COMMUNICATION IS TO BE CONSTRUED AS A DEPARTMENTAL OPINION UNLESS APPROVED BY THE ATTORNEY GENERAL OR FIRST ASSISTANT

Honorable George H. Sheppard, Page 2

and in certain vehicles; and a glance at the pertinent features
of these refund provisions is necessary to a discussion generally
of the questions presented by you. Section 13 (a) of the Motor
Fuel Tax Law allows a refund of the tax paid on the sale of
motor fuel which is used under the following circumstances
and for the following purposes:

"Any person who purchases motor fuel in the State
of Texas, and any distributor who appropriates motor fuel
for use when such motor fuel purchased by such person or
used by such distributor for operating or propelling any
stationary gas engine or tractor used for agricultural
purposes, motor boats, air craft, or for any purpose
other than use in a motor vehicle operated or intended to
be operated in whole or in part upon any of the public
highways, roads, or streets of the State of Texas on
which motor fuel tax has been paid, either directly or
indirectly, shall be refunded the amount of such taxes
so paid by the distributor, exclusive of the deduction
for evaporation and loss in the manner and subject to
the limitations and conditions described herein. Provided,
however, that no greater amount shall be refunded than has
been paid into the State Treasury on any motor fuel. The
tax actually paid by any distributor or person shall be
refunded as provided herein on motor fuel not subject to
the tax."

Section 13 (c) states the manner and requirements
for making this claim for refund:

"Upon each delivery by licensee, or upon each appro-
priation for use of motor fuel upon which a refund of the
tax may be claimed, an invoice of exemption shall be made
out at the time of such delivery, or of such appropriation
for use, which invoices of exemption shall state: the
number of the license of the licensee; the number of gallons
of motor fuel thus delivered or appropriated; the purpose
for which such motor fuel will be used, or is intended to
be used; the date of purchase, and the date and place of
delivery, or appropriation; the name of the purchaser or
user; the name of the agent or employee actually making
the purchase, or appropriation, if any; the seller and
place of business of seller; the manner of delivery.
And the said invoice of exemption shall show thereon such
other information as the Comptroller may require; and no
refund shall be allowed unless the seller or licensee,
at the time of any such delivery, or appropriation for use,
and not thereafter, executes such an invoice of exemption
as provided above."

Honorable George H. Sheppard, Page 3

With further reference to the statutory requirements for the filing of motor fuel tax refund claims and the due allowance thereof by the Comptroller, Subdivision (d) provides as follows:

"When a claimant purchases or acquires for use motor fuel upon which a refund of the tax may be due, he shall within six (6) months from the date of purchase of motor fuels upon which a refund is claimed, and not thereafter, file with the Comptroller an affidavit, on such forms as may be prescribed by the Comptroller. Said affidavit shall include a statement as to the source or place of purchase or acquisition of such motor fuel used for purposes other than in propelling motor vehicles over the highways of this State; that the information stated in the attached duplicate copy of the invoice of exemption is true and correct, and the manner in which said motor fuel was used, and that no part of said motor fuel was used in propelling motor vehicles over the highways of this State. Said affidavit shall be accompanied by the duplicate copy of the invoice of exemption above referred to, and the Comptroller may require other affidavits in such form and time as he may deem advisable, and if he finds that such claims are just, and that the taxes claimed have actually been paid, then he shall within sixty (60) days issue warrant or warrants for the amounts due claimant, but no warrant shall be paid by the State Treasurer after twelve (12) months from the date thereof, and if such warrant is not presented within twelve (12) months from the date thereof, claimant shall forfeit his right to the refund."

It appearing from the facts stated that the unit involved is a licensed or registered motor vehicle, the following provision of Section 13 (d) of the Motor Fuel Tax Law becomes highly pertinent:

"No refund of the tax shall be allowed on motor fuel used in any registered or licensed motor vehicle or in any motor vehicle operated or intended to be operated in whole or in part upon any of the highways, roads and streets of this State."

At first blush, and considering the foregoing prohibition without reference to the other provisions of the Motor Fuel Tax Law pertinent to this issue, it would appear that the Legislature has foreclosed the question by disallowing a refund of the tax on motor fuel used in "any registered or licensed motor vehicle", regardless of the nature, location, purposes or conditions of such use. In other words, a strict and literal interpretation of this provision would require the disallowance by you of all filed refund claims for motor fuel taxes on motor fuel used in, about or in connection with such vehicle, whether on or off the highway, and whether used for the propulsion of such vehicle or for the stationary power purposes indicated in

Honorable George H. Sheppard, Page 4

your first situation. Under this view, no inquiry into the facts and nature of the use to which such vehicle was put, would be required. The sole statutory test for the allowance or disallowance of a refund claim would be whether or not the vehicle in question was registered or licensed under the Registration Laws of the State of Texas. This has heretofore been your administrative interpretation of this prohibition and the opinion of this Department, under prior administrations; but due to the increasing use of motor vehicles, registered and licensed, for such non-highway purposes as would give right to a refund of the tax on motor fuel if used in engines and power plants admittedly within the refund provisions, it is not amiss that this holding should be carefully reviewed at this time.

It is elementary that statutes, or parts of statutes, pari materia, should all be considered together, if harmonious and unconflicting, in order to arrive at the true legislative intent, which is the paramount consideration in the interpretation of statutes. We shall therefore consider and interpret the provision that "no refund of the tax shall be allowed on motor fuel used in any registered or licensed motor vehicle" with the other provisions of the refund section, particularly, and of the Motor Fuel Tax Law, generally, bearing upon the nature of the refund and the conditions under which the motor fuel must be used to be refundable, in order to determine the exact limitations which the Legislature intended to impose upon the refund privilege.

It is a matter of common knowledge and legislative history that a tax upon the sale of motor fuel was conceived and designed for the raising of sufficient revenue to construct and maintain a complete and uniform system of State highways in this state. In theory, it was the legislative purpose to place this tax burden upon those who receive the benefits therefrom, i. e., the operators of motor vehicles upon the highways of this State for the carriage of persons and property. Hence, while the tax levy is denominated an occupation tax and accrues ostensibly upon the sale of motor fuel, on a gallonage basis, regardless of its ultimate use by the purchaser, it is the universally observed practice of the seller of this motor fuel to pass the tax on to the ultimate user as part of the purchase price. In fact, the statute itself requires that the amount of the tax be stated separately from the price of the commodity, upon the sale thereof, and the traveling public well understands that it is paying this tax rather than the refiner or first seller of the product in Texas. Under this policy that the users of the highways should bear the burden of the tax levied to raise revenue for their construction and mainte- nance, the Legislature, by the refund section hereinabove quoted, elected to refund the tax on motor fuel used "for operating or propelling any stationary gas engine or tractor used for agri- cultural purposes, motor boats, aircraft, or for any purpose

Honorable George H. Sheppard, Page 5

other than use in a motor vehicle operated or intended to be operated in whole or in part upon any of the public highways, roads or streets of the State of Texas."

Bearing in mind the nature and purpose of the motor fuel tax, we next advert to the particular portions of the Motor Fuel Tax Law which indicate the exact uses and conditions under which a refund is allowable. The caption of House Bill 247, Chapter 44, Acts, Regular Session, 43rd Legislature, with reference to the refund feature, states:

"Providing for the refunding of taxes paid on motor fuel in certain instances upon certain conditions where used for purposes other than propelling motor vehicles on the public highways, roads and streets of this state."

The motor fuel tax refund section of the law was amended by Senate Bill 179, Chapter 5, Acts, Regular Session, 40th Legislature, and this amendment is described in the caption thereof as "providing for refund of tax upon motor fuel used for purposes other than use in a motor vehicle operated upon the public highways, roads and streets of the State of Texas."

Section 2 (a) of the motor fuel tax law imposes a tax of 4¢ on each gallon of motor fuel or fractional part thereof, and this "motor fuel" is defined by Section 1 (a) of the Act as follows:

"'Motor Fuel' shall mean and include any volatile or inflammable liquid by whatever name such liquid may be known or sold, which is used or usable, either alone or when mixed or compounded, for the purpose of generating power for the propulsion of motor vehicles including crude petroleum if so used. The term 'motor fuel,' however, shall not include the product commonly known as kerosene, nor any other distillate of, or condensate from petroleum, or any other product with a flash point above 115 degrees Fahrenheit according to the United States official closed testing cup method of the United States Bureau of Mines, except when such kerosene, distillate, condensate, or any other product, either alone or blended with motor fuel, is used in operating motor vehicles on the public highways."

Section 1 (b) defines "motor vehicles" as follows:

"'Motor Vehicle' shall mean and include every vehicle operated upon the highways of this State which is propelled by the use of motor fuel."

Honorable George 2. Sheppard, Page 6

"Public highway" is defined by Section 1 (g) of the Motor Fuel Tax Law to "mean and include every way or place of whatsoever nature open to the use of the public as a matter of right for the purpose of vehicular travel."

More specifically, Section 13 (a) of the motor fuel tax law designates certain specific purposes and instances of the use of motor fuel on which the tax thereon is refundable, such as the operation or propulsion of stationary gas engines or tractors used for agricultural purposes, motor boats, and aircraft,and then concludes with the all-embracing, catch-all clause, viz., "for any purpose other than use in a motor vehicle operated or intended to be operated in whole or in part on any of the public highways, roads, or streets of the State of Texas."

Section 13 (d) of the act provides for the filing by claimants of an affidavit for refund within the stated time, which affidavit "shall include a statement as to the source or place of purchase or acquisition of such motor fuel used for purposes other than in propelling motor vehicles over the highways of this State; . . . and the manner in which said motor fuel was used, and that no part of said motor fuel was used in propelling motor vehicles over the highways of this State."

We direct attention to the consistent and repeated requirement of the above quoted provisions relating to motor fuel tax refunds, to the effect that no refund is allowable where the motor fuel is used in "propelling" motor vehicles over the highways of this State or used in "operating" motor vehicles upon the public highways. Considering, as we must under recognized rules of construction, this language in connection with the provision "that no refund of the tax shall be allowed on motor fuel used in any registered or licensed motor vehicle," we are constrained to say that the Legislature did not intend by the latter prohibition to deny a motor fuel tax refund on motor fuel used in registered or licensed motor vehicles for any and all purposes, as seems to be indicated by the bare language of this prohibition, but rather intended to deny refunds of the tax on motor fuel used for the purpose of generating power for the propulsion or operation of motor vehicles upon the public highways of this State, whether registered or not. As a

Honorable George H. Sheppard, Page 7

corollory from this construction, it would follow that the tax on motor fuel purchased for any other purpose than use in the propulsion or operation of motor vehicles upon, over, and along the highways of this State would be subject to the refund, and refundable purchases would not be limited to the specific ones named in the statutes, such as the operation or propelling of stationary gas engines, agricultural tractors, motor boats, and aircraft.

Our conclusion finds support in the authorities of other jurisdictions, turning upon similar refund provisions. In the case of Oregon-Washington Railway Nav. Co. v. Hoss, 274 Pac. 314, one of the courts described the nature of the motor fuel tax and the purpose of the refund provisions as follows:

"The intent of the law is evident. It was designed by the act, as indicated by the title, to collect a tax, then one cent a gallon, and later, by amendment, two cents a gallon, upon all gasoline sold for the purpose of being used on motor vehicles using the highways of the state, and to exempt from such burden gasoline used for other motor purposes. It being difficult, if not impossible, for the dealer in that commodity to ascertain for what purpose gasoline purchased from such dealer would be applied, he was charged by the state with two cents a gallon on all gasoline sold by him, leaving the consumer to apply for a rebate of two cents a gallon on all gasoline used by him for the excepted purposes.

. . . . .

"It was not the intent of the law to permit the state to apply taxes collected from sales of gasoline used for other than highway purposes to its own use. As to such money, it was merely a trustee to hold and refund upon proper application. In fact, while the treasurer was directed to pay the taxes collected over to the highway commission, he was also directed to keep on hand $5,000 for the purpose of complying with the refunding provisions of the act. The method adopted was simply intended as a convenient way of ascertaining as nearly as possible the quantity of gasoline actually consumed in vehicles using the highways. The method, in brief and as far as it applies here, was to compel the dealer to pay two cents a gallon on all gasoline sold by him and afterwards, on the presentation of proper affidavits, to refund the amount used for other than highway purposes to the consumer, who, in effect, had been compelled to pay the additional tax."

Honorable George H. Sheppard, Page 8

It is recognized that this construction will result in considerable enforcement difficulties in that motor fuel purchased and placed in the tank of a motor vehicle, is commonly used, not only to propel and operate said vehicle along or upon the public highways of this State, but is used to propel or operate such motor vehicle along private ways and other places not known and established as State highways. It will be difficult, if not impossible, to accurately audit possible refund claims and determine with any degree of certainty the amount of motor fuel used in such motor vehicle on privately owned premises and road ways. But this is an administrative matter rather than a legal one, and the difficulties encountered in the administration of a valid enactment cannot alter or change the construction required by the plain text of the statute.

But in this connection we can advise you, as a matter of law, that you will not be required to approve and pass to warrant any refund claim based upon mere estimate or guesswork by the claimant as to the amount of motor fuel which was used to propel or operate his motor vehicle upon and along private ways and premises or for other purposes than highway uses. The Legislature contemplated the exercise by you of a sound, official discretion in passing upon refund claims, because, by Section 13(d), it is provided, in connection with the affidavit accompanying such claim, that "the Comptroller may require other affidavits in such form and time as he may deem advisable, and if he finds that such claims are just, and that the taxes claimed have actually been paid, then he shall within sixty days issue warrant or warrants for the amounts due the claimant."

In the case of Brady v. Long, 159 N. E. 88, it was held that where it is impossible and impracticable to calculate and itemize gasoline consumed by motor trucks while not operated over highways, owner of trucks is not entitled to reimbursement of excise tax on gasoline so consumed.

The principles hereinabove discussed are applicable to each and all of the factual situations stated in your letter, and these we will proceed to answer seriatim. The first and second situations presented in your letter are germane and will be answered together. They read:

Honorable George H. Sheppard, Page 9

"1. Oil field equipment is used which is a licensed or registered motor vehicle (truck). On this truck is mounted a drilling rig. The truck motor is used for two purposes: (a) propelling the vehicle from place to place, which may be on public roads or highways, private property, such as leases, or both; (b) operating the equipment mounted on the truck strictly as a stationary engine. This is accomplished through a power take-off which separates the motor from the truck while so used.

"2. This same procedure is used in connection with the following classes of work: namely, post-hole drilling for power lines, pumping oil into tank built on the same truck, feed-grinding mills, oil well cementing, oil well treating, fire engines for pumping water on fire after arrival."

The allowance or disallowance of refund claims for the tax on motor fuel used for the purposes and under the conditions appearing in subdivision (a) of your first question, will be determined, in your discretion, by the sufficiency of the proof, in affidavit form, or otherwise, to convince beyond reasonable doubt and according to sound accounting practices, that such motor fuel was not used to propel or operate the registered motor vehicle in question along and upon any of the public highways of this State. More particularly stated; if it appears from the evidence and papers supporting this refund claim that the motor fuel was placed in one fuel tank connected with the carburetor of the truck and used principally to propel or operate the truck upon the public highways of the State, and incidentally, off the public highways, on private property and leases, etc., but no sound and accurate method is established for segregating the one type of use from the other, then we advise that you may, as a matter of law, under the principles and authorities hereinabove discussed, disallow such refund claim. This result is based upon the sound principle that where a refund claim is, through the fault or negligence of the claimant, based upon mere estimate or guess, without convincing proof as to its validity, you should, in your official discretion, resolve all doubts in favor of the State and against the claimant.

With reference to the use of motor fuel for the purposes and under the conditions outlined under subdivision (b) of your first question and under your second question, namely,

Honorable George H. Sheppard, Page 10

to operate drilling equipment and other power equipment mounted on a licensed or registered motor vehicle, through use of the truck motor, under a power take-off, we advise that the tax thereon is clearly refundable under the provisions of the refund section of the Motor Fuel Tax Law hereinabove fully discussed, subject, of course, to the sufficiency of the proof of such non-highway use.

Your third question reads as follows:

"The following situation has never arisen; however, the facts are true, and as such, must be given consideration. A farmer or rancher uses a registered truck; thereon he would have two fuel tanks and keep the fuel used for traveling on the roads or highways separate from that used while driving the same truck on his private property. This would require a switch from one fuel tank to the other at the proper time; and, furthermore, such trucks would not have a power take-off arrangement."

Under the principles discussed at the outset of this opinion, we advise that the tax on motor fuel properly and sufficiently shown to have been used for operating and propelling the registered truck in question upon private property and not upon and along highways of this State, would be subject to refund.

A refund is likewise indicated in connected with the unit described in your fourth question, reading as follows:

"Recently this department received a request to make refund of the state tax on motor fuel used in air-conditioning units installed in the rear of busses used on the highways. Such units have an entirely separate motor and fuel tank from that used to propel the motor vehicle. This permits keeping the fuel on which refund is requested entirely separate. These units often operate while the bus is stopped with its propelling motor entirely dead. The only equipment in common between the motors is the storage battery used for starting purposes. This seems to be the same setup as a truck on which is mounted a revolving concrete mixer. The mixer is operated by an entirely separate motor with a separate fuel tank."

Your fifth and last question describes the following practices and operations:

"Owing to many unregistered or unlicensed farm tractors now being equipped with pneumatic tires, this department often has the question arise as to whether refund of the tax can be made on motor fuel used in such tractors when driven under two conditions outlined as follows:

"(a) A farmer will use a road, street, or highway in connection with his work by driving his tractor from one farm to another. It may be for a few hundred yards or it may be several miles, but such use of the road is merely an incident to this farm work.

"(b) Many farmers habitually pull trailers over the roads, streets, and highways of the state, with a tractor, covering many miles, doing such work as pulling cotton to and from gins, hauling farm products of all kinds to market, hauling water in tank or trailer, etc."

It is the opinion of this Department that the tax on motor fuel used for the purposes and under the conditions set out in Subdivision (a) of your last question is subject to refund. We have reviewed the pertinent provisions of the Motor Fuel Tax Law indicating a legislative intent that the tax on motor fuel not used to propel or operate a motor vehicle over and along the highways of this State should be refunded. "Motor vehicle" within the intendment of the Legislature and the purview of the statutory definition thereof hereinabove quoted, means every vehicle, whether duly registered or not, "operated or intended to be operated in whole or in part upon any of the highways, roads, and streets of this State", for the purpose of transporting persons and goods from place to place. A farm tractor, such as involved here, although equipped with pneumatic tires, is not such "motor vehicle" as is permanently and ordinarily" operated or intended to be operated, in whole or in part, upon the public highways of this State, for the carriage of persons and property, and its use of the highways in going from farm to farm is so trivial and incidental as to fall within the principle of law, "de minimis non curat lex". Moreover, "tractors used for agricultural purposes" are expressly named in section 13(a) of the Motor Fuel Tax Law as being subject to the refund provisions thereof, and this declaration of the Legislature should not be rendered nugatory by a necessarily incidental use of the public highways by such tractors.

Conversely, it is our opinion that the tax on motor fuel used for the purposes and under the conditions stated in subdivision (b) of your fifth question, would not be subject to refund because the motor vehicle used here is "operated or intended to be operated in whole or in part upon the highways, roads, and streets of this State." Although used in connection with farming operations, we do not think it is a "tractor used for agricultural purposes," within the contemplation of the refund provisions, because it is constructed and designed for transporting property upon and along the highways of the State, and might be as conveniently used by contractors or other persons transporting property by trailer, as by farmers. It is not the class of persons using such tractor which is determinative of its inclusion in the refund provisions of the law, but rather the use to which such tractor is put.

With reference to the two outstanding opinions of this Department adverted to in your letter, the first under date of May 7, 1937, and the other of date June 7, 1938, both directed to you, we are, for the reasons herein given, constrained to overrule the first opinion, insofar as conflicting, and to reaffirm the second opinion mentioned.

Trusting the foregoing fully answers your several inquiries, we are

Yours very truly

ATTORNEY GENERAL OF TEXAS

By _____
Pat M. Neff, Jr.
Assistant

PMN:AMS

APPROVED JUL 25, 1940

Gerald C. Mann

ATTORNEY GENERAL OF TEXAS

THIS OPINION CONSIDERED AND APPROVED IN LIMITED CONFERENCE